# CHARLESTOWN.

BRIDGMAN *v.* BRIDGMAN.

Submitted June 13, 1887.—Decided September 23, 1887.

1. ADMINISTRATION.

By sec. 4 of chap. 85 of the Code, the husband or wife of a decedent is within thirty days after the death of said decedent first entitled to administer on the estate.   If neither of them does so, then either of the distributees of the estate may administer thereon.   (p. 219.)

2. ADMINISTRATION.

As between distributees the County Court must judge as to fitness for the trust and should exercise a sound discretion in the interest of all the distributees.   (p. 219.)

3. ADMINISTRATION.

After the expiration of the thirty days wider discretion is vested in the court; and it may appoint a creditor or a stranger, if no distributee applies; but if a suitable one then applies, he is entitled to the preference.   (p. 219.)

4. ADMINISTRATION.

4. While non-residence does not amount to disability, yet the courts in the exercise of a sound discretion should not appoint a non-resident distributee administrator, so long as any other distrib-

utees competent to act and willing to assume the trusts are within the jurisdiction of the court; and after the thirty days from the death of the decedent has expired, the court under ordinary circumstances should prefer a resident, who is not a distributee, to a non-resident distributee. (p. 221.)

5. ADMINISTRATION.

If one of the distributees applying is hostile to the others or a part of them, this will ordinarily be sufficient to justify the court in refusing to appoint him. (p. 221.)

6. ADMINISTRATION.

6. In vacation more than three months after the death of the decedent two of the distributees, who were non-residents of the State, applied to the clerk of the County Court to be appointed administrators of the decedent's estate; they were appointed and executed the bond; the clerk under the statute reported his action to the County Court at its next term, at which a resident distributee appeared and filed objections to the confirmation of the appointment and then applied himself to be appointed; the court refused to confirm the non-resident applicants and on motion of the latter committed the estate to the sheriff of the county for administration. On appeal to this court the order was affirmed. (p. 222.)

*R. T. McEldowney* and *W. S. Wiley* for the plaintiffs in error.

*Ewing, Melvin* and *Riley* for defendants in error.

JOHNSON, PRESIDENT:

Maria Bridgman died in Wetzel county in March, 1885, intestate. On the 28th day of July, 1885, A. R. and A. G. Bridgman, two of the children and distributees of Maria Bridgman, appeared before J. C. McEldowney, clerk of the County Court of Wetzel county, and asked to be appointed administrators of the estate of the said Maria, and said clerk thereupon appointed them such administrators, and they thereupon executed a bond with sureties in the penalty of $1,600.00 conditioned according to law. At the next regular session of the County Court of Wetzel county held on the 20th day of October, 1885, the said clerk having made his report of said appointments, the same coming up for confirmation, B. C. Bridgman, another son and distributee of said Maria, appeared in court and by leave filed objections in writing to the confirmation of said report, which were ordered to be filed, and the hearing and determination thereof were continued until the next regular session of said court, held

on the 15th day of January, 1886. By consent objections to the confirmation of said report were filed in lieu of the original, which had been filed and mislaid; and after hearing evidence and admitted facts certified by the court on consideration refused to confirm the appointment of A. G. and A. R. Bridgman as administrators of Maria Bridgman, deceased, made by the clerk of the court on the 28th day of July, 1885, and refused to appoint B. C. Bridgman. The court committed the estate of Maria Bridgman to the hands of the sheriff of Wetzel county, which was resisted by A. R. and A. G. Bridgman, and to the order they excepted.

The objections filed were as follows : 1st. That neither of the persons appointed is a resident of this State. 2nd. That they are not as distributees entitled to qualify, because they did not apply within thirty days after the death of Maria Bridgman. 3rd. Because objector is a distributee and a resident of this State and county and desires to qualify and asks to be appointed such administrator. 4th. Because being nonresidents process by the courts of this State could not be served on them. 5th. Because being non-residents they might institute suits in the federal courts against debtors or others and remove such suits, as might be brought against them, to such courts.

The following agreement of facts as to such objections were made between counsel. The first objection is admitted as a fact but is claimed not to be a good objection. As to the second objection it is admitted, that they did not apply or qualify within thirty days ; but they claim, that that does not preclude them from applying afterwards. As to the third objection it is admitted, that objector is a distributee, a resident of this State and offered to give bond and qualify as administrator and did so offer at the time he filed his objections ; but it is denied, that his rights are superior to those of the applicants, A. R. Bridgman being the oldest son ; and applicants claim, that objector was requested by them to qualify before they made their application, and that he refused to do so. As to the fourth objection applicants claim, that the law of West Virginia provides a remedy. It is also admitted, that B. C. Bridgman is a son and distributee, and that he did not apply to qualify till the 20th day of October, 1885.

A. R. Bridgman being sworn stated, that Maria Bridgman died in March 1881; that she left no will, so far as he knew; that she died in Wetzel county, W. Va.; that he is her son; that he is the oldest child living, and that he has three sisters, Adeline Kester, Emily Smith, Frances Witten and two brothers, A. G. Bridgman and B. C. Bridgman; that Maria Bridgman's husband, his father, died in 1881 in Monroe county, Ohio; that he lives in Sardis, Monroe county, Ohio; that his mother went to live with her son, B. C. Bridgman, after his father died; and that she died there; that about six weeks after her death he had a conversation with B. C. Bridgman at New Martinsville, Wetzel county, and asked him if he intended to have an administrator appointed for his mother's estate and he said "there is no need of it; there is no property to administer on; what little there was left mother gave to me;" that he went away and said no more to him. He further said "I believe that at the time I said to him that I could not see what she had done with the money she got since father's death, and he said there was none of it left hardly after the funeral expenses were taken out of it. Being asked what property his mother owned at the time of her death, he said: "I could not state it all, but I have made a calculation of what she got after father's death and it was somewhere between $2,500.00 and $3,000.00 as near as I could come at it. Being asked if his relations with his brother Benjamin (B. C. Bridgman) were friendly or unfriendly, said, they would be considered unfriendly, because we have been lawing so much. So far as I am concerned, I have no ill feeling. Being asked if he did not intend to bring another suit as administrator, if he had the appointment confirmed, said, " I don't know for what; I don't know of any suit, because if I get this appointment, and he settles with me fair, that would end it."

A. G. Bridgman in his evidence said he knew his mother had considerable property, he thought something near $3,000.00, that it came from land, that was sold and part of a mill and personal property and rents of farms.

I have given the substance of all the evidence as certified by the County Court. From the order made A. R. and A. G. Bridgman appealed to the Circuit Court, who on hearing

on the 10th day of June, 1886, dismissed the appeal, which was equivalent to an affirmance of the order. To this order the said A. R. and A. G. Bridgman obtained a writ of error.

Sections 1 and 2 of chapter 118 of the Code as amended by the Acts of 1881, p. 110, are as follows:

"1. The clerk of any County Court during the recess of the regular sessions of such court may appoint appraisers of estates of decedents, admit wills to record, appoint and qualify executors, administrators, guardians, curators and committees, and require and take from them the necessary bond, in the same manner and with the like effect for the time being, as the said County Court could do, if in session; but no contest as to such probate or appointment shall be heard or determined by such clerk.

"2. The probate of every will and the appointment of every appraiser of the estate of a decedent, executor, administrator, guardian, curator and committee so made by such clerk shall be reported by him to the next regular session of the County Court, when, if no objection be made thereto, the court shall confirm the same. But if objection be made by any person interested, the County Court shall hear and determine the same and shall proceed in relation thereto in the same manner, as if the application for the probate of such will or the appointment of such appraiser of the estate of a decedent, executor, administrator, guardian, curator or committee had been made in said court. And the court may make from time to time pending such proceedings such orders, as it may deem necessary for the protection and safe-keeping of the estate of the testator or intestate."

The third section provides, if such appointment be confirmed or be without contest, the same shall be held and treated in all respects, as if the appointment had been made by the County Court in the first instance. This case stands then precisely, as if the application had been made to the County Court on the 15th day of January, 1886, and it had entered the order refusing to appoint either A. R. and A. G. Bridgman on their application or B. C. Bridgman on his application and then on motion of B. C. Bridgman against the protest of the others committed the estate to the sheriff for administration.

How is the law as to who is entitled to administer on an estate? Section 4 of chapter 85 of the Code is as follows:

"In case of a person dying intestate the jurisdiction to hear and determine the right of administration of his estate shall be in the court, which would have jurisdiction as to the probate of his will, if there was a will. Administration shall be granted to the distributees, who apply therefor, preferring first the husband or wife and then such of the others entitled to distribution as the court shall see fit. If no distributee applies for administration within thirty days after the death of the intestate, the court may grant administration to one or more of his creditors or to any other person."

Section 5, among other things, provides as follows: "If after administration is granted to a creditor or other person than a distributee, any distributee, who shall not before have refused, shall apply for administration, there may be a grant of probate or administration in like manner as if the former grant has not been made, and the said former grant shall thereupon cease."

Section 10 provides as follows: "If at any time three months elapse without there being an executor or administrator of the estate of the deceased (except during a contest about decedent's will or during the infancy or absence of the executor) the court, before whom the will was admitted to probate, or having jurisdiction to grant administration, shall on the motion of any person order the sheriff or other officer of the county to take into his possession the estate of such decedent and administer the same. Whereupon such sheriff or other officer without taking any other oath of office or giving any other bond or security than he may have before taken or given shall be the administrator or administrator *de bonis non* of the decedent with the will annexed, if there be a will, and shall be thenceforward entitled to all the rights and bound to perform all the duties of such administrator. The court may, however, at any time after revoke such order and allow any other person to qualify as executor or administrator."

In *Cutchin* v. *Wilkinson*, 1 Call 3, it was held that the person entitled to the estate is entitled to the administration.

In *Bray* v. *Dudgeon*, 6 Munf. 132, it was decided, that,

where the personal property of the wife is so settled by a deed executed before the marriage and duly recorded, upon her dying intestate the trustee is to convey the same to her legal heirs. Her nearest blood relation is in such a case entitled to the administration of her estate in preference to her husband.

In *Haxall* v. *Lee*, 2 Leigh 290, it appeared, that a person died intestate in 1825, and in 1830 a distributee and creditor came at the same time to ask administration, and it appeared, that both parties were respectable and responsible persons, and the Hustings Court gave the administration to the creditor. The distributee appealed to the Circuit Court, which reversed the order and gave the administration to the distributee, which order was affirmed by the Court of Appeals. The court said : "The statute gives the right of administration first to the husband or wife and then to those next entitled to distribution or such of the distributees, as the court shall most approve ; and although it authorizes the court, in case no such person apply for the administration within thirty days, to grant it to a creditor or creditors, who shall apply for the same, or any other fit person in its discretion, yet it provides, that, if after the grant of administration to a creditor, the wife or other distributee shall apply for it, the same shall be granted in like manner as if the former had not been obtained. If therefore in the present case administration had been granted to Haxhall, and Lee had come at any time afterward to demand it, the court must have revoked the grant thereof to Haxhall, and have given it to him. But the creditor and distributee came both together, and both were trustworthy. The court had no discretion to withhold the administration from the distributee and give it to a creditor."

In *Thornton* v. *Winston*, 4 Leigh 163, it was held, that the person, who was entitled to the estate of a decedent was entitled to the administration ; but when an executrix declines to qualify as such and agrees, that administration with the will annexed shall be granted to her daughter reserving the right to qualify after her daughter's death, the renunciation of the executorship was absolute and perpetual and can not be retracted after the death of the administratrix.

In *Hutcheson, Sheriff, Adm'r,* v. *Priddy,* 12 Gratt. 89, Judge Lee, after quoting the statute "The court may at any time afterward revoke such order and allow any other person to qualify as executor or administrator," said : "But these terms," any other person, must necessarily have some limitation, and this is to be found only in the sound discretion of the court, to which must be referred the fitness or suitableness of the party applying and the time and circumstances of his application.

In *ex-parte Barker,* 2 Leigh 780, Brockenbrough, Judge, said : "In the case now before us it was contended that the non-residence of Barker, the applicant, was an objection to the grant of administration to him, and 2d that the grant to Duval was not void but voidable only, and till it was revoked, administration could not be granted to another. As to the first the court is of opinion, that the fact that the applicant is a citizen and resident of another State, furnishes no legal objection. It is a matter of sound discretion. If there were creditors of the deceased in this State, and if the distributees lived in this State, it might be indiscreet and improper to give administration to a non-resident; but when the facts are otherwise, as in this case, the objection does not lie.

We have seen from these authorities, that the court exercises a sound discretion in the appointment of administrators. If a distributee and creditor ask appointment, and the applying distributee is wholly unfit for the trust, and the creditor was in every respect a suitable person, and the court appointed the creditor, we should unhesitatingly say, the discretion was properly exercised. After thirty days from the death of the decedent, if no distributee has applied, the court may grant administration to a creditor or any other person. But within the thirty days the administration must be granted to a distributee, if one applies, the court in its discretion preferring one fit and suitable for the trust. He would certainly not be compelled to appoint a distributee even within the thirty days, if there were none fit or suitable to execute the trust. Suppose the distributees were all idiots and lunatics, would it for a moment be supposed that the court should appoint them? Even after the thirty days have expired, and another person than a distributee has

been appointed, "any distributee, who shall not have before refused, * * * * may be granted of * * * * administration in like manner, as if the former grant had not been made ; and the said former grant shall thereupon cease. After three months from the death of the decedent, if no one has been appointed administrator, the court shall on the motion of any person commit the estate of the decedent to the sheriff of the county for administration * * * ˙ The court may however at any time afterwards revoke such order and allow any other person to qualify as executor or administrator."

Here Maria Bridgman died in March, 1885. No effort was made to have an administrator appointed until the 28th day of July, 1885, about four months after her death. As we have seen, the appointment by the clerk was merely temporary unless confirmed by the County Court. Then on the 20th day of October, 1885, when the report of the clerk was made, objections were filed by a resident distributee, who asked, that he himself might be appointed. The whole matter was continued until the 15th day of January, 1886, when the court having heard all the evidence and admissions of parties refused to confirm the appointment of the clerk and refused to appoint B. C. Bridgman ; and there being no other distributees applying, on motion of B. C. Bridgman the estate was committed to the sheriff for administration. In this did the court so abuse its discretion, that its order must be reversed ? It is insisted, that B. C. Bridgman refused to administer. There is no evidence, that he refused. The only evidence, upon which this claim is based, is that of A. R. Bridgman, who says, that about six weeks after his mother's death he asked B. C. Bridgman, if he was going to have an administrator appointed for mother's estate, and he said, he wasn't; that there was no need of it; that there was no property to administer on; that, what little there was, his mother had given to him &c. Here was no refusal to be administrator himself, if one were to be appointed. But his claim, that what estate his mother had left, was given to him, and the unfriendly feeling existing between him and his brothers, who had applied, was perhaps the reason, why the court did not appoint him. The

other two, who applied were non-residents of the State, and one of them at least admitted, that he had been having unfriendly litigation with his brother, B. C. Bridgman. These facts evidently controlled the County Court in the exercise of its discretion.

While non-residence is not in itself an objection, which would under all circumstances justify the court in refusing to appoint a non-resident distributee the administrator of an estate, yet it is a serious objection for obvious. reasons. In *Child* v. *Gratiot,* 41, Ill. 359, it was said by the court: "We see grave objections to the appointment of a non-resident administrator of an estate lying within this State, among which is the impossibility of compelling him to render an account and make a settlement and pay claims and demands against the estate, as he is beyond the reach of the process of the court and can set it at defiance to the great loss and injury of creditors" and the court might well have added and also to the great inconvenience if not to the loss and injury of distributees.

In *Chicago &c.* v. *Gould,* 64 Ia. 343, it was said: "Ordinarily in the absence of circumstances requiring the appointment of a non-resident it should not be made."

While non-residence does not amount to a disability, yet the courts in the exercise of a sound discretion will not appoint a non-resident distributee administrator, so long as any other distributee competent to act and willing to assume the trust is within the jurisdiction of the court, and after the thirty days from the death of the decedent have expired, the court under ordinary circumstances should prefer a resident, who is not a distributee to a non-resident distributee.

It seems to us, that in this case the hostility of the non-resident distributee, even had he been a resident of the State, would have justified the court in refusing to appoint him. It was held in Drew's Appeal, 48 N. H. 319: "No one next of kin is entitled to be appointed administrator, if by reason of his hostility to another of the next kin he is not a suitable person for the office. When all of the next of kin are thus disqualified a stranger may be appointed." It may be that B. C. Bridgman was entitled under the circumstances to ad-

minister, although that may be doubtful, yet he is not here complaining.

Under all the circumstances of the case the County Court exercised its discretion wisely and for the best interest of all concerned. Under section 10 of chapter 85 of the Code, if a proper distributee applies hereafter for administration, the County Court may in its wisdom appoint him. We can not say, that it erred in committing the estate to the sheriff of the county for administration.

The order of the Circuit Court affirming the order of the County Court is affirmed.

AFFIRMED.