DaCosta Smith, *et al.*

*v.*

Harvey W. Harmer, *et al.*

(No. 10287)

Submitted January 11, 1951.    Decided February 13, 1951.

*Robinson & Stump,* and *John S. Stump, Jr.,* for plaintiffs in error.

*DaCosta Smith, Jr., Maxwell & Young,* and *Haymond Maxwell, Sr.,* for defendants in error.

GIVEN, JUDGE:

This proceeding involves the appointment of a personal representative of the estate of Burr Smith, deceased, at the time of his demise a resident of Harrison County, who died testate on February 28, 1949, leaving an estate appraised at $132,160.19, including real estate situated in Harrison County valued at $8,660.00. He left surviving no child or descendant of any child, no father or mother, wife, brother or sister, no descendant of any brother or sister, and no grandfather or grandmother. By his will he devised and bequeathed all of his property, after payment of debts "in perpetuity to the West Virginia Historical Society, a corporation established under the laws of the state of West Virginia, and its lawful successors, all of said farm of 236 acres, and all of the rest, residue, and remainder of the property of which I may die seized and/or possessed, both real and personal, of whatsoever kind or character, and wheresoever situated, * * *", in trust for the establishment and maintenance of a public park "to be known as the Watters Smith Memorial Park, for the use, benefit, and enjoyment of the people of West Virginia". The will contained this further provision:

" (f) In case the West Virginia Historical Society should at any time be unable to act or serve, or to continue to so act or serve as my beneficiary and trustee, it is my will and desire that the West Virginia Conservation Commission or the West Virginia University, or the Board of Governors thereof, in the order named, shall take over as successor of said Historical Society, assume said * * * Historical Society's place as my beneficiary and trustee for the maintenance of said Memorial Park, and carry out the provisions of this my last will and testament pertaining to said Park. * * *."

The will was admitted to probate and the West Virginia

Historical Society, nominated executor therein, declined to qualify and suggested to the County Court of Harrison County the appointment of Harvey W. Harmer and Charles H. Washburn as administrators. Defendants in error, DaCosta Smith, Sr. and others, appeared before the county court, established that they were of the next of kin of Burr Smith, and within thirty days from the demise of Burr Smith, moved the county court to annul the appointment of Harmer and Washburn and to appoint DaCosta Smith, Sr. Upon the hearing of the motion the county court revoked the appointment of Harmer and Washburn, for the reason that the appointment had been prematurely made. Thereupon, the motion of DaCosta Smith, Sr. and others, to the effect that DaCosta Smith, Sr. be appointed administrator, was denied, and Harmer and Washburn were again appointed as administrators *cum testamento annexo* of the estate. The refusal of the county court to appoint DaCosta Smith, Sr. was based on the finding by the county court that DaCosta Smith, Sr. "has an interest hostile to the said will of the said Burr Smith." Upon writ of error to the Circuit Court of Harrison County, the order of the county court appointing Harmer and Washburn was reversed and the circuit court appointed DaCosta Smith, Sr. administrator *cum testamento annexo* of the estate of Burr Smith, deceased.

The finding of the county court that DaCosta Smith, Sr. has an interest hostile to the will which rendered him an unsuitable person to administer the estate was based upon the following facts, properly before the court: DaCosta Smith, Sr. and others instituted a chancery cause in the Circuit Court of Harrison County, which was pending at the time, and in which suit they contended that the will of Burr Smith, deceased, was void. The bill of complaint filed in the chancery suit alleges, *inter alia*, that plaintiffs therein constituted all of the known paternal kindred of Burr Smith; that the plaintiffs are heirs at law of the said decedent; "That, as appears from the face of said purported last will and testament, the attempted disposition and requirements of the same, so far as a trust is proposed, are

not only impracticable but are impossible of execution, and therefore, the said attempted devises and bequests are void and of no effect"; that for other alleged reasons said will is "void"; and "That by reason of the fact that all of the devises and bequests attempted to be made by said will, are void and of no effect, the right and title to a moiety of all the property named in said devise and bequest, is cast upon these plaintiffs as heirs at law and distributees of the estate of said Burr Smith, deceased, because the said decedent must be considered as having died intestate as to all of said properties, both real and personal." The prayer of the bill is to the effect that the "purported will of Burr Smith, * * * be held and declared to be null and void, and of no legal effect; that the said probate be set aside and vacated; that the appointment of the defendants, Charles H. Washburn and Harvey W. Harmer, as administrators with the will annexed of the estate of Burr Smith, deceased, be vacated and set aside, and that there be appointed an administrator of the personal estate of said decedent." The amended and supplemental bill filed in the chancery cause adopts "all of the allegations of the original bill except only as corrected and supplemented by this amended and suplemental bill", makes all of the known maternal kindred of Burr Smith parties plaintiff or defendant, and prays for the same relief as prayed for in the original bill.

Upon these facts defendants in error claim that the appointment of DaCosta Smith, Sr. was made mandatory by applicable statutory provisions, while plaintiffs in error contend that the county court acted within its discretionary power in appointing Harmer and Washburn, and that the refusal to appoint DaCosta Smith, Sr., because of his established hostility to the will, was proper and justified. The applicable statutory provisions are Sections 2 and 4 of Article 1 of Chapter 44 of the Code, which read:

§2. "If there be no executor appointed by the will, or if all the executors therein named refuse the executorship, or fail when required to give such bond, which shall

amount to such refusal, or have died, such court, or clerk thereof during the recess of the regular sessions of such court, may grant administration, with the will annexed, to the person who would have been entitled to administration if there had been no will, and he shall take such oath and give such bond."

§4. "When a person dies intestate the jurisdiction to hear and determine the right of administration of his estate shall be in the county court, or clerk thereof during the recess of the regular sessions of such court, which would have jurisdiction as to the probate of his will, if there were one. Administration shall be granted to the distributees who apply therefor, preferring first the husband or wife, and then such of the others entitled to distribution as such court or clerk shall see fit. If no distributee apply for administration within thirty days from the death of the intestate, such court or clerk may grant administration to one or more of his creditors, or to any other person."

In the Virginia Code of 1819, from which Section 2 was derived, the words "shall grant administration" were used instead of the words "may grant administration", and the change to the present wording appears to have been effected in the adoption of the Virginia Code of 1849. In contrast the words "administration shall be granted", now used in Section 4, appeared in the 1819 Code of Virginia and have continued in that form in each of the Virginia and West Virginia Codes. Notwithstanding the change in the wording of Section 2 as indicated, the defendants in error contend that the word "may" appearing in Section 2 must be given the meaning of "shall", and that, therefore, the county court had no discretion as to the appointment, but was required to appoint DaCosta Smith, Sr., he being the only heir or distributee applying therefor within thirty days after the demise of Burr Smith. We think, however, that the provisions of Section 2 and Section 4 must be considered in *pari materia* for determination of the powers of the county court as to such appointment.

In *Bridgman* v. *Bridgman*, 30 W. Va. 212, 3 S. E. 580, two non-resident children were appointed administrators of the estate of decedent by the clerk of the county court more than thirty days after her demise. Before the appointment was confirmed a resident son appeared, objected to the confirmation and moved his own appointment. The county court refused to confirm the clerk's appointment, refused to appoint the resident son, and committed the estate to the sheriff of the county for administration. The action of the county court was approved by this Court, it appearing that there existed ill feeling among the children of decedent who applied for administration. In Point 5 of the syllabus the Court held:

"If one of the distributees applying is hostile to the others or a part of them, this will ordinarily be sufficient to justify the court in refusing to appoint him."

After reviewing the decisions relating to the subject matter, the Court observed:

"We have seen from these authorities, that the court exercises a sound discretion in the appointment of administrators. If a distributee and creditor ask appointment, and the applying distributee is wholly unfit for the trust, and the creditor was in every respect a suitable person, and the court appointed the creditor, we should unhesitatingly say, the discretion was properly exercised. After thirty days from the death of the decedent, if no distributee has applied, the court may grant administration to a creditor or any other person. But within the thirty days the administration must be granted to a distributee, if one applies, the court in its discretion preferring one fit and suitable for the trust. He would certainly not be compelled to appoint a distributee even within the thirty days, if there were none fit or suitable to execute the trust. Suppose the distributees were all idiots and lunatics, would it for a moment be supposed that the court should appoint them? * * *."

In *Taylor* v. *Coal Co.*, 78 W. Va. 455, 88 S. E. 1070, the putative father of decedent qualified as administrator of

his estate within thirty days of his death. The mother of decedent later applied for administration, apparently after the expiration of thirty days from the time of the death of decedent, but being unable to execute bond she nominated or suggested plaintiff, who was also appointed administrator of the estate by the county court. This Court held, Point 3 of the syllabus:

"Where administration has been granted to a stranger, and the sole distributee, who has not previously declined the appointment, thereafter appears before the county court or the clerk thereof in vacation, and designates a suitable person for the appointment in his stead, it is the duty of the court or clerk, as the case may be, to appoint such person; and the order appointing him operates as a revocation of the former appointment, by virtue of Sec. 5, Ch. 85, Code."

It does not appear that any question was raised as to the qualification or fitness of either of the persons appointed. The question actually before the Court was whether the mother, being the sole distributee but unable to qualify, was entitled, under the statute, to designate or nominate the person to administer the estate. The Court, in discussing the question, stated: "* * * Apparently, the statute does not prefer the distributee because of any peculiar fitness to fill the office, but on account of his or her beneficial interest in the estate to be administered. Where there is but one distributee, as in this case, the right seems to be absolute, as in the case of a husband or wife of a decedent. If such distributee is *sui juris*, the court has no discretion to refuse the appointment. Why, therefore, may not the person having the sole right delegate it to another? The statute does not prohibit it, and we perceive nothing in the policy of the law to forbid it. * * *." See *In Re: The Estate of Stollings*, 82 W. Va. 18, 95 S. E. 446; *Murphy* v. *Karnes*, 88 W. Va. 242, 106 S. E. 655.

In *Moore* v. *Thomas*, 115 W. Va. 237, 174 S. E. 876, it was alleged "* * * that Thomas is an improper person to have been appointed curator, because, by the terms of the

will, an estate valued at from one-half million to one million dollars has been left to Thomas and his wife, and that Thomas is hostile to the interests of petitioners; * * *." The Court held, Point 2, syllabus:

> "A person appointed curator of an estate pending a contest as to the validity of a will, should be a person qualified to handle the affairs of the estate with impartiality and even-handedness as between the conflicting interests in the estate, and a petition filed in a proceeding under Code, 44-5-5, to remove a curator that alleges facts which make such impartiality and even-handedness extremely unlikely, if not impossible, is sufficient on demurrer."

In discussing the point the opinion says: "* * * The petition avers substantially that James H. Thomas is one of the contesting parties in the contest of the. will, now pending, and that by reason of the fact that as curator he would be required to reduce to possession assets in his hands as attorney-in-fact and as administrator of the estates of decedent and of her husband, respectively, that such conflicting interests are lodged in him as would make it impossible for him to conduct the estate as curator with the impartiality and even-handedness required. On this writ of error, the averments of this petition have been very carefully re-examined, and we are of opinion that in the event that the averments of the petition are sustained by proof, a proper case has been made out for the removal of the curator. * * *."

In *Hutcheson* v. *Priddy*, 12 Gratt. 85 (Va.) decided in 1855, involving the appointment of a personal representative of an estate, the Court held, as indicated in the 4th headnote: "It is not imperative on the County court to grant administration to a distributee after the estate has been committed to the sheriff; but there is a legal discretion in the court."

In *Haxall* v. *Lee*, 2 Leigh 267, decided in 1830, Lee, a nominee of the widow and of a distributee, and a creditor applied at the same time for administration of an estate.

The Court held that Lee was entitled to the appointment, both of the applicants for the appointment being "respectable and responsible persons" and both being "trustworthy".

In *Smith* v. *Lurty,* 107 Va. 548, 59 S. E. 403, the Court held:

"Though, under the express terms of Code 1904, §§ 2637, 2639, on an executorship being declined, testator's widow had the preferable right to qualify as administrator with the will annexed, if she was a suitable person, it was proper to refuse to appoint her, where she was very hostile to and not upon speaking terms with the principal devisee and legatee, was litigating with the curator of the estate, and was asserting title to property which testator attempted to dispose of by his will."

In the opinion we find this conclusion:

"Conceding that the widow, under these sections of the Code, if she was a suitable person, had the preferable right to qualify as administrator of her husband with the will annexed, the court did not err in refusing to allow her to do so upon the facts disclosed by the record. She was very hostile to and not upon speaking terms with Miss Smith, the principal devisee and legatee under the will. She was litigating with the curator, both as plaintiff and defendant, and was asserting title to property which her husband had attempted to dispose of by his will. Under these circumstances the circuit court properly declined to appoint her as administrator. See Bridgman v. Bridgman, 30 W. Va. 212, 3 S. E. 580; 18 Cyc. 93, and cases cited."

In *Nickels' Adm'r.* v. *Horsley,* 126 Va. 54, 100 S. E. 831, the Court held:

"An appellate court will not review an order granting a motion under Code 1904, §2687, for the revocation of the appointment of an administrator, except where manifest injustice has been done, or where it is plain that proper case has not been made for the exercise of the discretionary power of removal."

In the opinion the Court stated:

"Where there are antagonistic interests, and the probability that the administrator will be called on to conduct litigation between himself individually and himself as administrator of the decedent, it is clear that he should not be appointed; and, if these antagonisms develop after the appointment, he should be removed. * * *."

In Volume 2, Schouler on Wills, Executors and Administrators (5th ed.) page 1016, Section 1104, it is stated: "* * * One may be considered unsuitable for the appointment who holds already some other trust whose interests decidedly conflict with those of the estate in question. Or who is largely indebted to the estate, especially if the amount due has not been ascertained. Or who was partner of the deceased at the time of his death. Or who is hostile to another of the next of kin. Or who is otherwise so adversely interested to heirs, creditors, or other kindred, as to prejudice the due settlement of the estate, if it be placed under his charge. For the administrator should be interested in settling the estate, not unfaithfully or partially, but faithfully, for the welfare of all concerned."

These authorities, correctly we believe, clearly support the view that the statutes under consideration are not to be construed as being mandatory, as applied to situations where the person applying or nominated for appointment as administrator of an estate is not suitable for the appointment, but that the county court must use sound discretion in such matters, and that such rule applies where the application for the appointment or the nomination is made within thirty days after the death of the decedent. Of course, if there be no question as to the suitability of such person or the unsuitability be not clearly established by proper proof, those designated by the statute have the absolute right to the appointment. *Bridgman* v. *Bridgman, supra.* This being true, we necessarily must determine whether the finding of the county court that DaCosta Smith, Sr. was not a suitable person to administer the estate was justified.

As one of the next of kin of Burr Smith, DaCosta Smith, Sr. joined in the chancery suit instituted for the purpose of having the will decreed void and to have the assets thereof distributed to the next of kin of Burr Smith, in direct opposition to the expressed intent of the will. In this position he is apparently joined by all of the paternal and maternal kin of Burr Smith. As administrator *cum testamento annexo* he would be duty bound to defend the validity of the will and to carry out its provisions requiring distribution to others than the next of kin of Burr Smith, while as next of kin he would insist that the will is invalid. This, we think, demonstrates such a conflict of interests and such hostility toward the purposes of the will as to justify the holding of the county court. *Bridgman* v. *Bridgman, supra; Moore* v. *Thomas, supra; Smith* v. *Lurty, supra;* and *Nickels' Admr.* v. *Horsley, supra.* In *Butcher* v. *Kunst,* 65 W. Va. 384, 64 S. E. 967, Point 8, syllabus, this Court held:

> "An order of the county court appointing an administrator, whether distributee, creditor, or other person, will not be set aside on writ of error to this Court, unless it plainly appears that there was abuse of the discretion of the county court in making such appointment."

It appears from the appraisal of the estate that Harmer and Washburn, at the time of making the appraisal, were indebted to the estate in considerable amounts and the contention is made that because of this indebtedness they are interested parties and therefore not suitable persons to administer the estate. It does not appear that there is any controversy as to the existence or the amount of the indebtedness. Harmer and Washburn signed an appraisal indicating an acknowledgment of the correctness thereof. In these circumstances we can not say that the mere existence of such indebtedness renders them unsuitable persons to administer the estate. The matter, in the first instance, was for determination by the county court, and we find no basis for disturbing its findings.

The judgment of the Circuit Court of Harrison County

in reversing the order of the County Court of Harrison County, and in appointing DaCosta Smith, Sr. as administrator *cum testamento annexo* of the estate of Burr Smith, deceased, is reversed and the case remanded for settlement of the estate.

*Reversed and remanded.*