DEWEY KUHNS *v.* HAZEN FAIR, *Committee, etc., et al.*

(No. 9331)

Submitted September 2, 1942. Decided October 20, 1942.

David A. McKee, for plaintiff in error.
*Galbraith & Johnson,* for defendants in error.

KENNA, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Marshall County by Dewey Kuhns against Leo Callison, warden of the state penitentiary, and Howard Adkins, a convict, for the purpose of recovering for personal injuries received by the plaintiff March 15, 1940, as the result of the collision of a loaded coal truck being driven by the convict from a mine operated by the state to the penitentiary over a one-way bridge spanning Graves Creek on the Fork Ridge Road with the automobile then and there being driven by the plaintiff, the amended declaration being in three counts and alleging damages to the extent of twenty thousand dollars.

The original process and declaration are not included in the record brought up. The circuit court entered an order on February 28, 1941, sustaining the plaintiff's motion to dismiss Howard Adkins, the convict, and to substitute his committee. This order does not remand the case to rules, but at April Rules, 1941, the amended declaration was filed, a summons having been issued on March 10th, and having been served upon Hazen H. Fair, as committee for Howard Adkins. The amended declaration at the end of the third count contains an allegation that Hazen Fair was, by the County Court of Marshall County, appointed committee for Howard Adkins on _____ day of March, 1941. Otherwise it names only the convict, thus creating the impression that this slight addition is the only change made in the original declaration.

On June 11, 1941, Hazen Fair, committee for Howard Adkins, appeared in open court and filed what is captioned as his plea in abatement, setting up the fact that under Code, 28-5-33, the only statute authorizing the appointment of committees for convicts incarcerated in the state penitentiary, the terms apply only to convicts who own an estate consisting of either personalty or real property, and that there is no provision for the appointment of a committee for a convict who owns no property located in this state, and that due to the fact that Adkins has no property in West Virginia, the appointment of a committee to act for him exceeded the jurisdiction of the County Court of Marshall County. The same plea attempted to raise the question that the plaintiff by instituting his action against one only of two joint tort feasors has irrevocably exercised his right of election. See *Coal Co. v. Eary*, 115 W. Va. 46, 174 S. E. 573.

The plaintiff demurred to the plea so filed, and after the defendant warden and Hazen Fair had appeared and demurred to the declaration, the case was submitted to the trial court to determine the sufficiency of the plea and of the declaration. The trial court overruled the demurrer to the plea, and the plaintiff not desiring to further plead, dismissed the case as to the committee. The trial court sustained the demurrer of Callison to the declaration, and the plaintiff not wishing to amend further, dismissed the action as to him also.

Under the wording of Code, 56-4-33, it seems clear that a plea in abatement cannot be filed after the rules at which a conditional judgment is entered. However, this Court has excepted a plea of *ne unques administrator* questioning the right of the plaintiff who instituted the action as administrator to act as such from this rule. In the case of *Taylor v. Coal Co.*, 78 W. Va. 455, 88 S. E. 1070, syllabus one clearly decides that such a plea may be filed within the time that a plea of the general issue may be entered. It will be observed, however, by reading the last paragraph, beginning on page 456 of the opinion, that the court reaches the conclusion that since the process was re-

turnable to August Rules, the plea filed at September Rules, and the declaration not filed until November Rules, that the plea under consideration was lodged in full compliance with the terms of what was then section sixteen of chapter 125, Code, now Code, 56-4-33. Since the plea now before us, although signed by the defendant as committee, raises the question of the invalidity of his appointment as such by the county court, we believe that that question was treated by the trial court as the controlling matter submitted for decision. That being so, the plea will be so treated here.

In the *Taylor* case, the Court had a difficulty similar to the one that we think we are confronted with here in determining whether the paper under consideration should be regarded as a plea in abatement or as a special plea in bar. We believe that there are certain matters that can be set up either in abatement or by a special plea in bar, and that the invalidity of a fiduciary appointment is one of such matters under the rule established by the *Taylor* case.

In the trial court, the only defense presented to the special plea was the contention that it should not be entertained because it constituted a collateral attack upon the appointment of the committee under the order of the Marshall County Court, treating that order as voidable and not subject to that method of questioning its validity. The order of the county court, of course, on its face does not show that the convict for whom the committee was appointed owned no property, and, therefore, it is contended that it is necessary to go behind that order, valid on its face, and show the facts constituting its invalidity, or, in other words, that the order is voidable only. On the other hand, it is said that a county court has no inherent jurisdiction, even acting as a court of probate, to appoint a committee to take charge of the affairs of a convict, and that its right and power to do so, being entirely statutory, rests solely upon the conditions prescribed by the statute granting that power, and that upon exercising that power, it is the duty of the county court to inquire concerning

property, either real or personal, owned by the convict and that if and when it does so, its order should so show, and that in the absence of that showing in its order, it may be collaterally attacked. We are under the impression that by plain analogy, the *Taylor* case, above referred to, settles the fact that the improper appointment of a fiduciary can be raised in a proceeding where the fiduciary is undertaking to act as a party litigant, the burden resting upon the beneficiary to show his qualification as such, and that it can be there shown that the attempted appointment was entirely without the statute, the county court exercising a ministerial function not accompanied by the usual presumption of correctness attending the exercise of judicial duties.

Since there was no question raised in the trial court as to whether or not the plea of Fair, sheriff, was to be treated as a plea in abatement or as a special plea in bar, and since we believe that on either bases of treatment, the demurrer to that plea was correctly overruled and the facts being admitted, the finding of the trial judge to the effect that the statute does not authorize the appointment of a committee for a convict who owns no property, either real or personal, is affirmed.

On the remaining question concerning the liability of the warden of a state penal institution for damages resulting from his exercise of a governmental function, the decided cases are very few, but we think they all either sustain, or do not run counter to, the principle that in the absence of a gross breach of duty there is no resultant liability. Code, 28-5-3, makes it the duty of the warden to carry out the rules and regulations of the Board of Control and provides specifically that the method followed in punishing convicts shall be authorized by that board. The warden, in other words, is simply the instrument by and through which the State Board of Control operates the state penitentiary. Furthermore, he has no choice in the selection of the persons whose conduct he controls, neither has he the right to discharge the persons guilty of improper conduct, though possibly he might, to some

extent, regulate their conduct by assigning them to different duties. We believe for these, and other reasons, that the law of master and servant does not govern the relationship between the warden of the penitentiary and the convicts therein confined, but that the warden is the actual custodian of the state's wards, and as such, is exercising a governmental function under the control and direction of the State Board of Control. Therefore, the judgment of the Circuit Court of Marshall County is affirmed.

*Affirmed.*